UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE<br>    THE PLAINTIFF, | Civil Action No.: |
| v. | |
| NEW ENGLAND STAIR COMPANY, INC.<br>    THE DEFENDANTS. | May 4, 2018 |

## EMPLOYMENT DISCRIMINATION COMPLAINT

### I. INTRODUCTION

1. Federal law makes it unlawful for employers to discriminate against their employees on the basis of their sexual orientation or on the basis of their disability - including because they are HIV-positive or have a learning disability. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et.seq.*; *Zarda v. Altitude Express,* 883 F.3d 100 (2d Cir. 2018), 2018 U.S. App. LEXIS 4608; Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.; Rivera v. Heyman,* 157 F.3d 101, 103 (2d Cir. 1998).

2. Defendant New England Stair Company (NESCO), through its President William J. Sylvia harassed, belittled, denied time to attend medical appointments, and terminated John Doe, its openly gay employee, who is HIV positive and suffers from a learning disability, in violation of these laws, calling him a "f…ing faggot" and stating that "I never would have hired you if I had known you were sick."

3. Through this lawsuit Plaintiff seeks to hold Defendant NESCO responsible for its discriminatory actions against John Doe which has caused him tens of thousands of dollars in lost wages and benefits, extreme emotional distress and damage to his

career. Plaintiff also seeks the imposition of punitive damages to punish the Defendant for its illegal discriminatory conduct as well as attorneys' fees and costs.

## II.     JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over these federal claims pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district under 28 U.S.C. § 1391 because the acts or omissions giving rise to the claims in this Complaint took place in this district.

6. Plaintiff has exhausted all administrative remedies antecedent to this Complaint.  He filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on September 11, 2015.  The EEOC issued a Notice of Right to Sue on August 4, 2017 which was received by Plaintiff on February 6, 2018.  That Notice indicated that Plaintiff had the right to sue in federal court within 90 days of his receipt of that Notice, or by May 7, 2018.

## III.    THE PARTIES

7. Plaintiff, John Doe, is a resident of Storrs, Connecticut. Plaintiff is an openly gay man who has tested positive for HIV in January of 2015. Plaintiff also suffers from a learning disability, attention deficit disorder with hyperactivity, known as "ADHD."

8. Defendant, New England Stair Company, Inc. ("NESCO"), is a Connecticut corporation with its principal place of business at 1 White Street Extension, Shelton, Connecticut.  Defendant is in the business of building custom stairways.

9. Defendant employs more than fifteen employees. 42 U.S.C. § 2000e (b); 42 U.S.C. § 12111(5)(A).

**IV.     FACTS**

10.   Defendant NESCO hired Plaintiff on or about April 15, 2015, as its Vice President of Design.

11.   Plaintiff has a degree in architecture from Wentworth Institute of Technology, which he received in 2010 and six years of work experience at several architecture firms.

12.   NESCO paid Plaintiff a salary of approximately $72,000, plus commission. The commission plan paid 0.5% of sales for the week for the first 60 days then increased to 1% after the first 60 days.

13.   At all times relevant to this complaint, William Sylvia was the President and CEO of Defendant. During Plaintiff's employment, Defendant's Human Resources Manager was Paul Matthews and its Office Manager was Angela Sylvia, William Sylvia's daughter-in-law. Plaintiff reported directly to Mr. Sylvia.

14.   At the time that Defendant hired Plaintiff, Plaintiff did not disclose that he was gay.

15.   During April, May and June, William Sylvia treated him in a professional and respectful manner.

16.   Around the fourth of July weekend, Plaintiff had a conversation with his co-worker Mark Demmerle regarding their plans for the holiday.  During this conversation, Plaintiff told Demmerle that he and his partner David were going out of town for the weekend. William Sylvia overheard this conversation.

17.   After learning that Plaintiff was gay, William Sylvia began to make loud derogatory comments directed at Plaintiff, calling him a "faggot" and "cocksucker."

These comments were made loud enough so that Plaintiff's co-workers could hear them.

18. Also, after the fourth of July holiday, Plaintiff requested time away from work to attend a medical appointment for an ear infection. He requested this time specifically from Sylvia. Sylvia grudgingly let Plaintiff leave for this appointment.

19. When Plaintiff returned to work the following day, William Sylvia verbally berated Plaintiff for being away from work for the medical appointment and told him that he needed to make up the time. When Plaintiff became upset, Sylvia accused him of "crying like a girl." These comments were made loud enough so that Plaintiff's co-workers could hear them.

20. Sylvia's conduct caused Plaintiff to become upset and tearful in the workplace.  On a prior occasion, William Sylvia had stated that he had refused to hire an employee when he learned he had a disability, and this comment along with Sylvia's conduct caused Plaintiff to fear for his job.

21. HR Manager Mathews and Office Manager Angel Sylvia saw that Plaintiff was upset and crying and took him outside of the office to help him calm down.

22. During this meeting, Plaintiff told them that he had both a learning disability (ADHA) and a life-threatening illness and that it was very important that he go to his medical appointments. Plaintiff explained that he tried to schedule appointments so as not to disrupt the work day but that was not always possible.

23. Mathews and A. Sylvia said to Plaintiff, "we will figure this out, your health is important, take care of yourself."

4

24. In or about the second week of July, Plaintiff subsequently told Sylvia that he needed to leave work for a medical appointment on July 17, 2015 with his infectious disease doctor. Plaintiff told Sylvia that the appointment was for a "life-threatening illness" and that he "needed to go." Sylvia replied, "you always have an excuse to leave. If I had known how sick you were, I never would have hired you."

25. Plaintiff did not attend his July 17, 2015 appointment with his HIV doctor because he was afraid he would lose his job.

26. After missing this appointment, Plaintiff was unable to refill his HIV prescription. Plaintiff spoke to his doctor and was able to get a short-term refill but only if he agreed to attend a new appointment. Plaintiff at this time asked his doctor to send a note to his work explaining the need for his appointment.

27. On or about July 28, 2015, Plaintiff's doctor faxed a note to Defendant indicating that Plaintiff had an medical appointment on August 10, 2015 that he needed to attend. Plaintiff received the fax and gave it to HR Director Mathews, stating, "here's a doctor's note; I have to attend this appointment."

28. Mathews took the note and stated, "ok, I'll take care of this."

29. In or about late July 2015, on information and belief, Defendant learned that Plaintiff was HIV positive.

30. On July 31, 2015, when Plaintiff went to pick up his paycheck from William Sylvia, he reminded Sylvia of his upcoming doctor's appointment.

31. At that time, Plaintiff's absences for medical appointment were being approved by Mr. Sylvia.

32. Mr. Sylvia became visibly angry at the news of Plaintiff's doctor's appointment.

33. At 2:27pm on August 1, 2015, the very next day, William Sylvia emailed Plaintiff to inform him that Defendant NESCO was changing Plaintiff's compensation plan as well as his work day schedule. In the email, Mr. Sylvia set out a specific schedule by which Plaintiff was to adhere when scheduling doctors' appointments. Defendant also wrote, "there will be no commission paid during any work week where the employee has worked other than the required full-time shift and from the shift starting time to the shift ending time at a minimum."

34. Defendant NESCO's change in its commission policy was restricted to Plaintiff and penalized Plaintiff for the time that he had to miss work for a doctor's appointment in that it deprived him of a bonus for that week – even if he worked a full day but outside of regularly scheduled hours.

35. Defendant NESCO only changed its commission policy for Plaintiff.

36. Plaintiff told William Sylvia that he did not agree with the changes to his commission plan.

37. As President, Sylvia was the highest-ranking employee at Defendant.

38. Matthews never met with Sylvia about Plaintiff's complaint and never ask Sylvia to treat Plaintiff with respect.

39. Whenever Plaintiff objected to Sylvia about his derogatory and discriminatory comments, Sylvia would respond, "they are just words, I can say whatever I want."

40. Sylvia's conduct caused the Plaintiff to suffer severe emotional distress as well physical illness, including trouble sleeping, night sweats, weight gain, and required that he take additional anxiety medication. Sylvia also caused Plaintiff to be fearful for his physical safety.

41. On the morning of August 10, 2015, when Sylvia entered the office, Plaintiff reminded Sylvia that he had to leave early for his previously scheduled doctor's appointment. Sylvia yelled at him about the fact that he had to take time away from work for his medical appointment, in front of his peers.  Sylvia told Plaintiff that he would have to come in on Saturday to make up the time. Plaintiff explained that he could not come into work that weekend as he had plans to be out of state. Sylvia then told him, "if you don't come in Saturday, you can't go to your doctor's appointment." Plaintiff told Sylvia that he had to go to this appointment because he had missed his earlier appointment. Sylvia then yelled at Mathews, in front of Plaintiff's co-workers, "Find me someone to replace Plaintiff! Once I find someone to replace you, you are gone!" At that point, Plaintiff became upset and was crying.  Sylvia left Plaintiff's workspace.

42. Within minutes, Sylvia returned and upon seeing Plaintiff still crying, yelling at Plaintiff, "what is wrong with you?"  Sylvia then said to Plaintiff "come with me to my office. I don't want you crying and sniffling in front of everyone like a faggot."

43. Plaintiff followed Sylvia to his office. Once there, Sylvia continued to yell at him and call him names.  Sylvia accused Plaintiff of lying to him about his work ethic, crying like a girl and told him that he was a "brain dead m-----f----r" and a "faggot." Plaintiff told Sylvia, "you can't talk to people like this" and Sylvia laughed and said, "these are just words, I can say whatever I want because I sign your paycheck." Plaintiff

said, "that's not fair, this isn't fair, I can't do this anymore, it's not fair that you call me these things." Sylvia screamed at him to get his things and get out.

44. Sylvia then followed him out of his office, continuing to scream at him in front of his co-workers. Sylvia called him a "faggot" and stated that "he wanted to make sure he [the Plaintiff] didn't steal any of NESCO's property" and threatened to call the police.

45. Plaintiff was so distraught by Sylvia's behavior that he forgot his glasses at his desk, but Sylvia would not let him get them.

46. Later that day, Plaintiff arrived at his doctor's appointment for his previously scheduled appointment. He was visible distraught and crying over Sylvia's treatment of him.

47. Defendant's conduct caused the Plaintiff to suffer extreme emotional distress. Specifically, NESCO's conduct caused the Plaintiff to suffer severe emotional distress, as well as physical illness, including trouble sleeping, night sweats, weight gain, fear for his physical safety and required that he increase his anxiety medication.

48. As a result of the Defendant's discriminatory conduct, the Plaintiff lost his job, has and will continue to suffer lost wages and other perquisites of employment, a loss or impairment of his earning capacity and lost career opportunities. Additionally, the Plaintiff has and continues to experience pain and suffering and emotional distress as a result of the Defendant's conduct and has had to incur attorneys' fees and costs in bringing this action.

## V. DISCRIMINATION ON BASIS OF SEXUAL ORIENTATION – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e.

1.-52.   The Plaintiff incorporates by reference Paragraphs 1-51 above.

49.   As set out more fully above, Defendant discriminated against Plaintiff - an openly gay man - in the terms and conditions of his employment by repeatedly referring him to a "faggot," a "cocksucker"; accusing him of "crying like a girl" and "crying and sniffling in front of everyone like a faggot;" threatened to fire him; and ultimately fired Plaintiff.

50.   Defendant's conduct was motivated in part, because of Plaintiff's sexual orientation.

51.   Defendant's conduct constituted unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

52.   Defendant's engaged in this conduct with malice or reckless disregard to the Plaintiff's federally protected rights.

53.   As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to lost income, lost benefits, emotional distress and mental anguish, attorneys' fees and court costs.

## VI. DISCRIMINATION ON BASIS OF DISABILITY - AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12101, *et. seq.* (HIV Positive Status)

1.-52.   The Plaintiff incorporates by reference Paragraphs 1- 51 above.

56.   Plaintiff is a person with a disability, within the meaning of the ADA as he is HIV-positive.

57.     As set out more fully above, Defendant discriminated against Plaintiff in the terms and conditions of his employment including preventing him from attending doctor's appointments, changing his compensation plan, stating he never would have hired him if he knew he was "sick", threatened to fire him and ultimately fired Plaintiff.

58.     As set out more fully above, Defendant's treatment of Plaintiff was motivated, at least in part, due to Plaintiff's status as a person with a disability, and/or because Defendant regarded him as a person with a disability.

59.     Defendant's treatment of Plaintiff violated the ADA, 42 U.S.C. §12101, *et. seq.*

60.     As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to lost income, lost benefits, emotional distress and mental anguish, attorneys' fees and court costs.

**VII.    DISCRIMINATION ON THE BASIS OF DISABILITY – AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12101, *et. seq.* (Learning Disability)**

1.-52.  The Plaintiff incorporates by reference Paragraphs 1- 51 above.

61.     Plaintiff is a person with a disability, within the meaning of the ADA as he has a learning disability - ADHD.

62.     As set out more fully above, Defendant discriminated against Plaintiff in the terms and conditions of his employment including preventing him from attending doctor's appointments, changing his compensation plan, stating he never would have hired him if he knew he was "sick", threatened to fire him and ultimately fired Plaintiff.

63. As set out more fully above, Defendant's treatment of Plaintiff was motivated, at least in part, due to Plaintiff's status as a person with a disability, and/or because it regarded him as a person with a disability.

64. Defendant's treatment of Plaintiff violated the ADA, 42 U.S.C. §12101, *et. seq*.

65. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to lost income, lost benefits, emotional distress and mental anguish, attorneys' fees and court costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff John Doe seeks the following relief:

1. Lost wages, benefits and other perquisites of employment;

2. Compensatory damages;

3. Punitive damages;

4. Attorneys' Fees and costs;

5. Interest; and

6. Such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiff John Doe requests a trial before a jury on all issues so triable.

                                PLAINTIFF John Doe,

By:    __/s/_ *Deborah L. McKenna*____
          Deborah L. McKenna
          Federal Bar No.: ct17326
          The Hayber Law Firm, LLC
          900 Chapel Street, Suite 620
          New Haven, CT 06510
          Telephone: (860) 522-8888
          Fax: (860) 218-9555
          dmckenna@hayberlawfirm.com
          Attorney for Plaintiff