UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JOHN DOE,<br>*Plaintiff,*<br>v.<br>NEW ENGLAND STAIR COMPANY, INC.,<br>*Defendant.* | Civil No. 3:18-cv-756 (JBA)<br><br>December 19, 2018 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Pseudonymous Plaintiff John Doe brings suit against his former employer, New England Stair Company, Inc. ("NESCO"), for discriminatory treatment and discriminatory termination on the basis of his sexual orientation and disabilities (HIV-positive status and learning disability), under Title VII, 42 U.S.C. § 2000e *et seq.* and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Defendant's Motion to Dismiss, ([Doc. # 17]), raises only one ground for dismissal—untimeliness, due to Plaintiff's failure to file his federal claims within 90 days of the issuance of his right-to-sue notice from the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleges, however, that he did file his federal claims within 90 days of *his* receipt of the notice.

**I.    Background**

Plaintiff's Amended Complaint, ([Doc. # 15]), alleges that Defendant, primarily through its President William J. Sylvia, subjected Plaintiff to discriminatory treatment, harassment, and discriminatory termination.

In September 2015, Plaintiff filed charges of discrimination with the EEOC and the Connecticut Commission on Human Rights and Opportunities (CHRO). (Am. Compl. ¶ 6.) The CHRO is obligated by regulation to provide protection of confidential HIV-related information, which it attempted to do here by using its mailing address for Plaintiff when corresponding with

the Respondent (Defendant). (*Id.* ¶ 7.) Correspondence sent to Plaintiff in care of the CHRO was then sent to Plaintiff by the CHRO. (*Id.*) During the pendency of Plaintiff's case, the CHRO practice was to forward any correspondence it received regarding Plaintiff to Plaintiff at his home address. (*Id.* ¶ 8.) Plaintiff understood that it was his responsibility to keep the CHRO informed as to his address so that the agency could provide him with all documents received on his behalf. (*Id.* ¶ 9.)

On August 8, 2016, Plaintiff informed the CHRO investigator working on his case that he had changed his home address, who responded by email to Plaintiff "as for the change in address, the change has been noted and will be the new mailing address for future mail correspondence." (*Id.* ¶ 10.) The CHRO continued to forward all mail correspondence to Plaintiff's new address after August 2016. (*Id.* ¶ 11.) On April 17, 2017, the CHRO issued a Release of Jurisdiction, stating that "the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides." (*Id.* ¶ 12.)

On August 4, 2017, unbeknownst to Plaintiff, the EEOC issued a Notice of Right to Sue regarding Plaintiff's pending federal claims. (*Id.* ¶ 13.) This Notice of Right to Sue was sent to Plaintiff in care of the CHRO at 55 West Main Street, Waterbury, CT 06702. (*Id.*)

The CHRO's Waterbury office received the notice on August 8, 2017. (*Id.* ¶ 14.) At that time, Plaintiff's case file had been closed by the CHRO. (*Id.*) The CHRO investigator handling the case had the file retrieved from storage, placed the EEOC Right to Sue notice in the file and returned it to storage. (*Id.* ¶ 15.)

No one from the CHRO sent the EEOC notice to Plaintiff, nor did anyone from the CHRO contact Plaintiff to find out if he had otherwise received a copy of the notice or let him know that they had received it. (*Id.* ¶ 16.) The EEOC notice states, "This will be the only notice of dismissal and of your right to sue that we will send you." (*Id.* ¶ 17.)

Plaintiff did not receive the EEOC Right to Sue from the CHRO until February 6, 2018. (*Id.* ¶ 18.) "That Notice indicated that Plaintiff had the right to sue in federal court within 90 days of his receipt of that Notice[.]" (*Id.*) Ninety days from February 6, 2018 was May 7, 2018. (*Id.*) Plaintiff represents that at no time during the pendency of the CHRO case did he elect to make the CHRO his agent for any purpose and that none of the regulations or statutes governing the CHRO appoint the CHRO as Plaintiff's agent for the purposes of receiving notice from the EEOC. (*Id.* ¶ 19.)

## II. Defendant's Motion to Dismiss

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6). "Although consideration of a Rule 12(b)(6) motion to dismiss is generally limited to the facts stated on the face of the complaint," a plaintiff's EEOC charge and right-to-sue letter "may be considered either as matters referenced in the complaint or as public records subject to judicial notice." *McBride v. Routh*, 51 F. Supp. 2d 153, 155 (D. Conn. 1999) (citations omitted).

### B. The Timeliness of Plaintiff's Filing of his Federal Claims

3

Defendant's argument boils down to the following: Plaintiff received constructive notice of the EEOC's release of its jurisdiction by virtue of the EEOC sending it to him at the CHRO address, and Plaintiff is not entitled to equitable tolling because the circumstances here were not extraordinary and because Plaintiff failed to act diligently to protect his rights.

In order to be timely, claims under the ADA and Title VII "must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). Defendant argues that "[a]lthough Plaintiff claims that he did not actually receive the EEOC Notice from CHRO until February 6, 2018, the date of constructive receipt is the operative date for triggering the 90-day filing period." (Mot. Dismiss [Doc. # 17] at 1 (citing *Tiberio*, 664 F.3d 35 at 37).)

While *Tiberio* does hold that "the 90–day limitations period set forth in 42 U.S.C. § 2000e–5(f)(1) begins to run on the date that a right-to-sue letter is first received either by the claimant or by counsel, whichever is earlier[,]" 664 F.3d at 38, the CHRO here was not acting as Plaintiff's counsel, and the Court's research reveals no extension of *Tiberio*'s holding to a case with facts analogous to those here. While the Complaint does not specify when Plaintiff's counsel first received the EEOC right-to-sue letter, nothing on the face of the Complaint implies that Plaintiff's counsel received it on any date earlier than Plaintiff.

*Tiberio* describes a set of rebuttable presumptions as to when notice was received. "There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice." *Id.* at 37 (citations omitted). "There is a further presumption that a mailed document is received three days after its mailing." *Id.* "The initial presumption is not dispositive, however, if a claimant presents sworn testimony or other admissible evidence from which it could reasonably

4

be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." *Id.* (internal quotation marks and citation omitted).

Defense counsel conceded for purposes of this motion that neither Plaintiff nor Plaintiff's counsel received the EEOC notice before February 6, 2018 but argues that *Tiberio*'s triggering date holding applies to the CHRO's receipt of Plaintiff's right-to-sue letter. Defendant contends that the CHRO was Plaintiff's agent for the purpose of receiving service, and that the CHRO's shortcomings in getting the notice to Plaintiff are thus attributable to Plaintiff: "[b]y pursuing his claims before the CHRO and the EEOC under the John Doe pseudonym, Plaintiff appointed the CHRO as his agent for the limited purposes of handling all Complaint-related communications, and the CHRO by its actions and pursuant to its own regulations undertook the role of limited agent." (Reply to Pls.' Opp'n to Mot. Dismiss [Doc. # 21] at 2.) In support of this argument, Defendant cites Conn. Agencies Reg. § 46a-54-37a, which is entitled "Complaint involving confidential HIV-related information or victims of sexual assault; use of pseudonym." The regulation provides that where "a complaint involves reference to confidential HIV-related information . . . concerning the complainant or another individual[,]" the CHRO "shall take two complaints with the same number[.]" *Id.* § 46a-54-37a(a)(1).

> The first complaint shall include the full name and address of the complainant or reference to another individual and shall not be disclosed. . . . The second complaint shall be identical to the first, except that a pseudonym shall be substituted for the name of the complainant or other individual and **the address, if any, shall be that of the commission's office investigating the complaint or the address of an attorney or other representative designated by the complainant or other individual**. Any complaint involving confidential HIV-related information shall be drafted to avoid revealing the name or identity of the complainant or other individual to the greatest extent possible. The filing of a complaint shall not be deemed to constitute a waiver of confidentiality rights under chapter 368x of the

5

> Connecticut General Statutes, **and the commission shall take all reasonable steps to protect the identity of such persons from unlawful disclosure.**

*Id.* § 46a-54-37a(b) (emphasis added). In particular, Defendant understands the bolded clauses to provide that "[a]bsent the complainant's designation of an attorney or other representative, the CHRO shall be the complainant's representative for purposes of protecting his identity and accepting service of pleadings and notice." (Reply at 3-4.) And because "Plaintiff was not represented by counsel at the time he filed his CHRO Complaint and because he did not designate another representative, the CHRO was his agent for the purposes delineated in §[]46a-54-37a." (*Id.* at 4.)

Government agencies may be appointed by law as the agent for accepting service for certain members of the public. A "statutory agent" is "[a]n agent designated by law to receive litigation documents and other legal notices for a nonresident corporation[,]" and "[i]n most states, the secretary of state is the statutory agent for such corporations." AGENT, Black's Law Dictionary (10th ed. 2014). *See also* Fed. R. Civ. P. 4(e)(2)(C) (providing that certain individuals may be served by "delivering a copy of [the summons and complaint] to an agent authorized by appointment *or by law* to receive service of process" (emphasis added)).

Examination of two examples where the Connecticut state legislature has designated state agencies as the agents for service of process for non-state actors is instructive to test Defendant's proposition that the CHRO was appointed as agent for Plaintiff. In the statutory provision entitled "Insurance Commissioner as agent for service of process[,]" Connecticut law provides that "[t]he Insurance Commissioner is the agent for receipt of service of legal process" for fifteen specified types of business organizations. Conn. Gen. Stat. § 38a-25(a)(1)-(15). Similarly, Connecticut law

provides that "a foreign corporation may appoint the Secretary of the State and his successors in office to act as its registered agent." *Id.* § 33-660(b).

By contrast, the regulatory language related to the CHRO cited by Defendant contains no reference whatsoever to "agency," "service of process," or any related terms. While the regulations do provide that "the address, if any, shall be that of the commission's office investigating the complaint[,]" the regulations do not impose any express duties upon the CHRO to act as a complainant's agent for service of process, or to forward correspondence to a complainant within a reasonable period of time. The same regulatory provision *does* impose a separate express duty upon the CHRO to "take all reasonable steps to protect the identity of such persons from unlawful disclosure[,]" but nowhere suggests that the CHRO's duties to a complainant extend beyond protecting his or her identity to also serving as an agent for service.

Defendant contends that this regulation was "issued pursuant to the CHRO Commission's power to promulgate regulations and presumably pursuant to Conn. Gen. Stat. § 19a-583, 'Limitations on disclosure of HIV-related information.'" (Reply at 3 n.6.) But this statutory provision contains no reference to the CHRO acting as an agent for service of process for complainants. *See* Conn. Gen. Stat. § 19a-583.

The Court's research has revealed no instances of state agencies acting as agents for service of process for members of the general public absent specific statutory commands to do so. In the two instances discussed above where the Connecticut legislature *has* designated state agencies to serve this function, the legislature used clear, unambiguous language. And because the legislature has used the terms "agent for receipt of service of legal process" and "registered agent" in Conn. Gen. Stat. § 38a-25(a)(1)-(15) and § 33-660(b), it is clear that if the legislature wished to appoint the CHRO as the service agent for complainants, it knows the language to use and did not do so.

Similarly, while the CHRO's regulations create an express duty on the part of the agency to protect a complainant's identity, they contain no parallel language creating any duty to act as a complainant's service agent. Hence, Defendant's argument that the CHRO was appointed here as Plaintiff's agent is unavailing, and Defendant's Motion to Dismiss cannot be granted on this ground.

Defendant further argues that assuming that Plaintiff received constructive notice of the EEOC's letter, Plaintiff should not be granted equitable tolling, because "Plaintiff makes no allegation upon which equitable tolling could be based[.]" (Mem. Law. Supp. Mot. Dismiss [Doc. # 17-1] at 8.) "[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), as amended (July 29, 2003) (internal quotation marks, alterations, and citations omitted). Because the Court finds that based on the allegations in the Complaint, Plaintiff received neither constructive nor actual notice of the right-to-sue letter before February 2018, the doctrine of equitable tolling need not be applied, but would be applicable to these circumstances if needed.

### III. Conclusion

For the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of December 2018.