UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KYLE CHOLEVA<br>          *Plaintiff,*<br>      *v.*<br>NEW ENGLAND STAIR COMPANY, INC.,<br>          *Defendant.* | Civil No. 3:18-cv-756 (JBA)<br><br>July 14, 2020 |

**RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant New England Stair Company, Inc., moves for summary judgment on two claims raised by Plaintiff Kyle Choleva in this employment discrimination action. ([Doc. # 53].) Specifically, Defendant asserts that it is entitled to summary judgment on Plaintiff's claim of disability discrimination on the basis of Plaintiff's HIV-positive status (Count Two) and Plaintiff's claim of disability discrimination on the basis of his learning disability (Count Three).[1] Plaintiff opposes Defendant's motion.

For the reasons that follow, the Court denies summary judgment on Count Two but grants summary judgment to Defendant on Count Three.

**I.  Background**

Plaintiff Kyle Choleva is a gay man, who was diagnosed as HIV-positive in January 2015 and who was diagnosed as having Attention-Deficit Hyperactivity Disorder ("ADHD") sometime in his youth. (Parties' L.R. Stmts. [Docs. ## 54, 66] ¶¶ 7, 9-11.) Both his HIV and ADHD are managed through medication. (*Id.* ¶¶ 14, 15.) Plaintiff's HIV is "controlled by the anti-viral drugs

---

[1] Defendant does not move for summary judgment on Count One, which asserts a claim of employment discrimination on the basis of Plaintiff's sexual orientation. (*See* Am. Compl. [Doc. # 15] ¶¶ 62-66.)

that he is required to take," and he "does not have outward signs of being infected with the HIV-virus." (Pl.'s L.R. Stmt. ¶ 15.) Plaintiff's ADHD is "effectively controlled by taking prescribed medication," which has "enabled him to perform his work . . . without his ADHD interfering." (*Id.* ¶ 14.) Plaintiff has a background as a consultant for architectural companies. (Ex. 1 (Pl.'s Excerpts of Choleva Dep.) to Pl.'s L.R. Stmt. [Doc. # 66-1] at 6.)[2]

Defendant New England Stair Company, Inc., ("NESCO") is a business based in Shelton, Connecticut. (Parties' L.R. Stmts. ¶ 1.) William Sylvia was NESCO's owner and president until January 27, 2017. (Pl.'s L.R. Stmt. Additional Material Facts ("AMF") ¶ 1.) NESCO is now owned and operated by Matthew and Jennifer Sylvia, who are the children of William Sylvia and who held management roles in the company in 2015. (*Id.* AMF ¶¶ 5, 34.)

Plaintiff was hired by NESCO on April 15, 2015, and was given the title of "Lead Designer." (Parties' L.R. Stmts. ¶¶ 1-2.) His compensation was a weekly salary of $1,400, "plus commissions of .33% of billings." (Ex. A (NESCO Employment Offer) to Def.'s L.R. Stmt. [Doc. # 54-1] at 1.) In June 2015, Plaintiff was given the title of Vice President of Sales and Design. (Parties' L.R. Stmts. ¶ 2.)   In both roles, Plaintiff reported directly to Mr. Sylvia. (*Id.* ¶ 3.) Plaintiff's employment at NESCO lasted approximately four months, with his termination occurring on August 10, 2015. (*Id.* ¶ 1.)

Over the course of his employment, Plaintiff submitted multiple requests for time off from work. (*See* Ex. D (Time-Off Requests) to Def.'s L.R. Stmt. [Doc. # 54-4].) For example, on April 22, 2015, Plaintiff made a time-off request for a doctor's visit scheduled for May 19, 2015, asking that

---

[2] Because some of Plaintiff's excerpts of his deposition lack page numbering, the Court will identify the relevant pages of this exhibit according to the numbering of the ECF filing.

he be permitted to come in three hours late. (*Id.* at 2.) On May 26, 2015, Plaintiff requested three

hours off work for a May 29, 2015 doctor appointment involving a medical procedure. (*Id.* at 5.)

On June 5, 2015, Plaintiff made a request to leave work a half-hour early "to pick up [his] uncle

from the airport." (*Id.* at 9.) On June 8, 2015, Plaintiff went home from work early because he was

"not feeling well" and had "stomach issues." (*Id.* at 6-7.)  On June 23, 2015, Plaintiff submitted a

request to leave work two hours early for a doctor's visit to address an ear infection, and he

provided a note from his medical provider confirming the existence of the appointment. (*Id.* at 10-

11.) Each of these requests were signed and approved.

While employed at NESCO, Plaintiff "disclosed to Defendant that he had a 'partner' whose

name was David." (Parties' L.R. Stmts. ¶ 8.) "At some point during his employment," Plaintiff also

disclosed "that the reason he needed to take time off for doctors' visits and for tests had to do with

an unspecified 'life threatening illness.'" (*Id.* ¶ 16.) Plaintiff separately "disclosed to Defendant that

he took Ritalin." (*Id.* ¶ 12.) However, Plaintiff has admitted that he never specifically disclosed that

he was gay, that he was HIV-positive, or that he had been diagnosed with ADHD. (Parties' L.R.

Stmts. ¶¶ 9, 13, 17; *see also* Ex. B (Def.'s Excerpts of Choleva Dep.) to Def.'s L.R. Stmt. [Doc. # 54-

2] at 2-3.)

Plaintiff has testified that, during his employment at NESCO, then-President William

Sylvia often "berated" him, "repeatedly calling [him] a 'faggot' and 'cock sucker' and, you know,

'brain dead mother fucker,'" (Pl.'s Excerpts of Choleva Dep. at 42), and yelled at him to "stop crying

like a little girl," (*id.* at 58). Plaintiff also testified that Mr. Sylvia told him that "he would never

have hired [him] if he knew that [Plaintiff was] taking Ritalin." (Pl.'s Excerpts of Choleva Dep. at 26-27; *see also* Def.'s Excerpts of Choleva Dep. at 85, 87.)[3]

Plaintiff has also offered testimony from Matthew and Jennifer Sylvia—who are William Sylvia's children and who served as NESCO's Operations Manager and Controller, respectively, during Plaintiff's period of employment—describing their father's use of derogatory language. Matthew Sylvia testified that he had heard William use the words "queer" and "cocksucker" and that he had "probably" heard William use the term "queer" in the workplace. (Ex. 3 (Matthew Sylvia Dep.) to Pl.'s L.R. Stmt. [Doc. # 66-3] at 49-50, 52.) Jennifer Sylvia also testified that William "used the term 'queer' referring to gay people" and that he had also used the term "cocksucker." (Ex. 2 (Jennifer Sylvia Dep.) to Pl.'s L.R. Stmt. [Doc. # 66-2] at 95.) Jennifer Sylvia also testified that she understood that, in 2015, "dad was worse than ever" and that he "was pissed off and yelling more" and made the work environment negative and hostile "at times." (*Id.* at 136-37.)[4]

---

[3] In his Local Rule 56(a)2 Statement of Facts in Opposition, Plaintiff relies on this portion of his deposition for the factual proposition that "William Sylvia told [Plaintiff] that he would never have hired him if he'd known he was sick." (Pl.'s L.R. Stmt. AMF ¶ 15.) However, that proposition does not accurately reflect Plaintiff's testimony that Mr. Sylvia told him that "he would never have hired [him] if he knew that [Plaintiff was] taking *Ritalin*." (Pl.'s Excerpts of Choleva Dep. at 26 (emphasis added).)

[4] Plaintiff has also submitted an exhibit purported to be the testimony of Mark Demmerle, a former NESCO employee, before the Connecticut Commission on Human Rights and Opportunities ("CHRO") taken December 22, 2016. (*See* Ex. 12 (Demmerle Transcript) to Pl.'s L.R. Stmt. [Doc. # 66-12].) As indicated by that transcript, Mr. Demmerle stated that William Sylvia "verbally harasses people in the office from the moment they step in to the minute they leave," that he had heard Mr. Sylvia use slurs such as "faggot" in the workplace, and that he had heard Mr. Sylvia belittle Plaintiff. (*Id.* at 6-7, 9.) Mr. Demmerle also testified that he was aware of Plaintiff's sexual orientation and that he was aware that Plaintiff had a life-threatening disease. (*Id.* at 4, 7.)

In the final month of his employment, Plaintiff made three leave requests for medical

reasons. On July 24, 2015, Plaintiff submitted a request to leave work an hour early to visit his

doctor's office for the purpose of "pick[ing] up paper work for testing." (Time-Off Requests at 13.)

On July 25, 2015, Plaintiff requested the full day off work for "blood work," as required by his

doctor. (*Id.* at 14.) That same week, Plaintiff also submitted an advance request to take the

afternoon off work for a doctor's appointment scheduled August 10, 2015. (*Id.* at 15.)

On August 1, 2015, William Sylvia sent an e-mail to Plaintiff addressing his "requested time

off" and announcing changes to his compensation schedule. (Ex. 8 (Sylvia Aug. 1, 2015 E-mail) to

Pl.'s L.R. Stmt. [Doc. # 66-8] at 1.) The e-mail instructed Plaintiff that he would be paid "in

increments of the work day" and that "[t]o keep the company's cost down as associated with doing

the partial day calculations, [NESCO is] going to define full day, half day, and quarter day[] as

options for you to work on those days when you need time away from the workplace." (*Id.*) The e-

mail also announced that there would "be no commission paid during any work week where the

---

Without specifically objecting to its consideration, Defendant asserts that this exhibit "is not an official transcript, is not authenticated or certified, and bears no indicia of reliability." (Def.'s Reply [Doc. # 68] at 5.)

The Court has reviewed the Demmerle transcript and determined that it may consider the information contained therein for the purposes of this summary judgment motion. Although the transcript provided is not an official one, Mr. Demmerle's testimony could be "presented in a form that would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(2); *see also* 10A Fed. Prac. & Proc. Civ. § 2722 (4th ed.) ("[A]lthough the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial."). The transcript indicates that Mr. Demmerle's testimony before the CHRO was taken under oath, (*see* Demmerle Transcript at 1), and that this testimony was "based on [his] personal knowledge," and thus the content of his "statements would generally be admissible at trial." *Brunette v. City of Burlington*, No. 2:15-CV-00061, 2018 WL 4146598, at *22 (D. Vt. Aug. 30, 2018) (denying motion to strike unofficial interview transcripts).

employee has worked other than the required full time shift and from the shift starting time to the shift ending time at a minimum." (*Id.*)

On August 10, 2015, "a day that had been pre-authorized for Plaintiff to leave work for a medical appointment," Mr. Sylvia "informed Plaintiff that he must choose between keeping his medical appointment that day or making up the time that Plaintiff would miss by coming to work on the following Saturday." (Parties L.R. Stmts. ¶¶ 21, 22.) Plaintiff has testified that Mr. Sylvia "started yelling" and telling him that he "had to come in on the weekend to make up the time," even though Mr. Sylvia had "already docked [his] pay for leaving early." (Pl.'s Excerpts of Choleva Dep. at 72.) Plaintiff recalled that he responded by explaining that he was not "able to come in [that] weekend because [he] was going away, but . . . would make up the hours . . . either next week or throughout the week." (*Id.* at 72-73.) Plaintiff further testified that, "at that point," Mr. Sylvia began "yell[ing] down the hall" that the organization need to "find a replacement for [him]." (*Id.* at 73.)

On September 11, 2015, Plaintiff filed both a state claim with the Connecticut Commission on Human Rights and Opportunities and a Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC"). (Am. Compl. ¶ 6.) The CHRO issued its Release of Jurisdiction on April 17, 2017, and the EEOC issued a Notice of Right to Sue regarding Plaintiff's pending federal claims on August 4, 2017. (*Id.* ¶¶ 12, 13.)

Plaintiff brought this employment discrimination action on May 4, 2018. (*See* Compl. [Doc. # 1].)[5] At Count One, Plaintiff has alleged that NESCO had discriminated against him on the

---

[5] Plaintiff is also pursuing related intentional infliction of emotional distress claims against NESCO and William Sylvia in Connecticut Superior Court. *See Choleva v. New England Stair Co.*, No. AAN-CV18-6025867-S (Conn. Super. Ct. Jan. 3, 2018).

basis of his sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
2000e *et seq.* (*See* Am. Compl. ¶¶ 62-66.) At Count Two, Plaintiff has alleged that NESCO
discriminated against him on the basis of his HIV status, in violation of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (*See id.* ¶¶ 68-72.) At Count Three, Plaintiff
has asserted that Defendant also violated the ADA by discriminating against him because of his
ADHD, a learning disability. (*See id.* ¶¶ 73-77.)

On September 30, 2019, Defendant moved for summary judgment on the ADA claims
raised in Counts Two and Three.

## II.  Summary Judgment Standard

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all
permissible factual inferences in favor of the party against whom summary judgment is sought,"
*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R.
Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453
F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case
will identify those facts that are material, and '[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly preclude the entry of summary
judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for
summary judgment, the Court may consider depositions, documents, affidavits, interrogatory
answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

"The moving party bears the initial burden of showing why it is entitled to summary judgment." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where, as here, the nonmovant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Id*. at 272–73 (citing *Celotex*, 477 U.S. at 323). "If the movant makes this showing in either manner, the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Id*. (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)). "Like the movant, the nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.* (citing *Celotex*, 477 U.S. at 324; *Matsushita*, 475 U.S. at 586).

## III. Discussion

Plaintiff asserts that Defendant violated the Americans with Disabilities Act by discriminating against him because of his HIV-positive status (Count Two) and because of his Attention-Deficit Hyperactivity Disorder (Count Three). Defendant moves for summary judgment on each of these ADA claims on the grounds that Plaintiff has failed to establish a *prima facie* case of discrimination.

The ADA prohibits a covered entity from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). "Claims alleging disability discrimination in

8

violation of the ADA are subject to the burden-shifting analysis originally established by the

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973)." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). "To establish a

*prima facie* case of discrimination under the ADA, a plaintiff must show by a preponderance of

the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning

of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or

without reasonable accommodation; and (4) he suffered adverse employment action because of his

disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)

The Court will address Plaintiff's HIV-discrimination claim and his ADHD-discrimination

claim in turn.

### A.  Count Two: Discrimination on the Basis of HIV-Positive Status

Defendant seeks summary judgment on Count Two on the grounds that Plaintiff cannot

demonstrate that he suffered an adverse employment action as a result of his HIV-positive status.[6]

Defendant contends that Plaintiff's claim at Count Two "must fail because there is no

evidence" that NESCO "was aware" of Plaintiff's HIV-positive status. (Def.'s Mem. at 7.) Defendant

elaborates that Plaintiff's testimony establishes that he "alluded only to an unspecified 'life

threatening illness,'" but never actually "gave notice to NESCO of his HIV-positive status." (*Id.* at

8.) Defendant further asserts that Plaintiff showed no outward signs of having HIV, and that he

"never affirmatively disclosed his sexual orientation to Bill Sylvia, who indisputably is identified as

---

[6] Defendant acknowledges that it is an employer subject to the ADA's requirements and that Plaintiff's HIV-positive status qualifies as a disability under *Bragdon v. Abbott*, 524 U.S. 624, 647 (1998). (*See* Def.'s Mem. in Supp. Partial Summ. J. [Doc. # 53-1] at 7.)  Additionally, Defendant has not, at this stage, disputed that Plaintiff was otherwise qualified for his position.

the Defendant's decision-maker." (*Id.* at 9.) Defendant thus argues that Plaintiff's claim is based only on the "assum[ption] that, because NESCO knew he had a partner named David and had disclosed that he had a life threatening illness, that NESCO would assume he had HIV," but that these facts on their own did not give NESCO sufficient notice of Plaintiff's disability. (*Id.* at 10.)

Plaintiff responds that he is "is not required to show that Defendant had specific knowledge of [his] HIV infection," and that he needs only "show that Defendant was aware that he suffered from a life-threatening illness" and that Defendant thus "perceived him to be disabled." (Pl.'s Opp. to Def.'s Mem. [Doc. # 67] at 17.) Plaintiff points to evidence that Mr. Sylvia "decided to change [Plaintiff's] compensation" plan in a punitive manner "after he had missed work due to doctor's appointments and told his co-workers that he suffered from a 'life threatening condition.'" (*Id.* at 18.) Plaintiff asserts that that Mr. Sylvia's comment "on the fact that [Plaintiff] 'had a lot of doctor's appointments'" amounts to "direct evidence of discriminatory animus." (*Id.* at 19.) Plaintiff contends that a "jury could certainly conclude from these acts that William Sylvia at a minimum regarded [Plaintiff] as being disabled, was angry with [Plaintiff] for missing work due to his doctor's appointments and took adverse job action towards him as a result of these facts." (*Id.*)

For a plaintiff to establish that he suffered adverse employment action because of his disability, "[t]he employer's decision makers must have notice of the disability for the employer to be held liable under ADA; otherwise, discrimination cannot be 'because' of a disability." *Alleva v. Crown Linen Serv., Inc.*, No. 3:14-CV-1971 (MPS), 2016 WL 4717758, at *6 (D. Conn. Sept. 8, 2016); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 n.7 ("If [an employer] were truly unaware that . . . a disability existed, it would be impossible for [its employment action] to have been based, even in part, on [plaintiff's] disability."); *Watson v. Arts & Entm't Television Network*, No. 04 CIV. 1932 (HBP), 2008 WL 793596, at *14 (S.D.N.Y. Mar. 26, 2008) (explaining that "there

can be no liability" where "there is no evidence that defendant had notice of the disability"), *aff'd*, 352 F. App'x 475 (2d Cir. 2009). "To satisfy the notice requirement, a plaintiff must demonstrate that the defendant was aware that the plaintiff was 'disabled' within the meaning of the ADA." *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 305 (S.D.N.Y. 2014) (internal quotation marks omitted). Such awareness may be actual or constructive. *See Grunberg v. Quest Diagnostics, Inc.*, No. CIV.A. 3:05-CV-1201V, 2008 WL 323940, at *4-*5 (D. Conn. Feb. 5, 2008) (assessing whether defendant had "actual or constructive knowledge" of plaintiff's depression). When assessing a speaker's meaning for discriminatory animus, courts are to consider "various factors including context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam).

Here, Plaintiff has offered at least minimally sufficient evidence to allow a reasonable jury to infer that Defendant had notice that Plaintiff was HIV-positive. The parties in this case do not dispute that Plaintiff disclosed to Defendant that "he had a 'partner' whose name was David," (Parties' L.R. Stmts. ¶ 8), and "that the reason he needed to take time off for doctors' visits and for tests had to do with an unspecified 'life threatening illness,'" (*id.* ¶ 16). It is also "undisputed that Bill Sylvia was unhappy about Plaintiff's frequent absences," which were, with one exception, for medical reasons. (Def.'s Reply at 2.) Additionally, Plaintiff has testified that William Sylvia repeatedly called him pejoratives like "faggot" and "cock sucker," (Pl.'s Excerpts of Choleva Dep. at 42), and Matthew and Jennifer Sylvia have each admitted under oath that they have heard their father "use[] the term 'queer' referring to gay people" and that he had also used the term "cocksucker," (Jennifer Sylvia Dep. at 95; *see also* Matthew Sylvia Dep. at 49-50, 52). From these facts, a jury could infer that William Sylvia knew that Plaintiff was gay and that he perceived that Plaintiff's frequent doctors' appointments for a "life-threatening illness" were for the purpose of

11

treating HIV, particularly given the virus's "inseparabl[e] associat[ion] with the gay community because of HIV's initial emergence in, and its devastating impact on, gay men." Andrew J. Gordon, *End Around: HIV Discrimination in the Post-Amendments Act Workplace*, 36 BERKELEY J. EMP. & LAB. L. 215, 219 (2015); *see also Henderson v. Thomas*, 913 F. Supp. 2d 1267, 1278 (M.D. Ala. 2012) (explaining, in the context of an ADA claim brought by HIV-positive prisoners, that "social perceptions of HIV have yet to catch up with the modern realities of the illness," which has been "most frequently found among historically marginalized populations: particularly, gay men").

Accordingly, summary judgment is denied on Count Two.

## B. Count Three: Discrimination on the Basis of Learning Disability

Defendant also moves for summary judgment on Count Three on the grounds that Plaintiff's learning disability does not qualify as a "disability" within the meaning of the ADA and that, again, Defendant lacked notice of this asserted disability.

Defendant asserts that Attention-Deficit Hyperactivity Disorder "does not present a *per se* disability." (Def.'s Mem. at 7.) Defendant observes that Plaintiff was on Ritalin for his ADHD, and this medication allowed him "to perform all of the duties of his position." (*Id.*) Defendant contends that "[i]n the absence of a showing that Plaintiff's ADHD affected his ability to work, the condition—at least when controlled, as here, by prescribed medication—does not qualify as a disability." (*Id.*)

In the alternative, Defendant argues that even if Plaintiff's ADHD qualifies as a disability, Plaintiff has failed to make a *prima facie* case at Count Three because "Plaintiff never disclosed to anyone at NESCO that he was diagnosed with ADHD or any learning disability," leaving the Defendant without notice. (*Id.* at 11.)

Plaintiff asserts, without further elaboration, that, as someone diagnosed with ADHD, he is "protected under the ADA because his learning disability affected his major life activity of learning, concentrating and thinking." (Pl.'s Opp. at 2.) Plaintiff adds that Defendant knew "he took Ritalin[,] a commonly prescribed drug for ADHD." (*Id.* at 21.) Plaintiff has also testified that Mr. Sylvia called him a "brain dead mother fucker,'" (Pl.'s Excerpts of Choleva Dep. at 42), and told him that "he would never have hired [him] if he knew that [Plaintiff was] taking Ritalin," (*id.* at 26-27; *see also* Def.'s Excerpts of Choleva Dep. at 85, 87). Plaintiff argues that a jury could infer that from these facts that "Defendant perceived [Plaintiff] as having a learning disability." (Pl.'s Opp. at 21.)

"To be considered disabled, a plaintiff must have a 'physical or mental impairment that substantially limits one or more major life activities . . . or be[ ] regarded as having such impairment.'" *Kopchik v. Town of E. Fishkill*, 759 F. App'x 31, 37 (2d Cir. 2018) (quoting 42 U.S.C. § 12102(1)). "A plaintiff diagnosed with ADHD may have a mental impairment within the meaning of the Americans with Disabilities Act, but that impairment must also limit a major life activity to a substantial degree." *Barone v. Judicial Branch of Conn.*, No. 3:17-CV-644 (VAB), 2019 WL 7283383, at *13 (D. Conn. Dec. 27, 2019) (internal alterations and footnote omitted); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1114 (9th Cir. 2014) (requiring Plaintiff to show that his ADHD "substantially limit[ed] either his ability to work or to interact with others"); *Johnson v. Sedgwick Cty. Sheriff's Dep't*, 461 F. App'x 756, 759 (10th Cir. 2012) ("For [Plaintiff's] ADHD to have been a disability under the ADA, it must have substantially limited one or more of [his] major life activities." (internal quotation marks and alteration omitted)). "A plaintiff must show that [his] impairments do not simply cause some difficulty with a major life activity, but that they substantially limit that activity." *Barone*, 2019 WL 7283383, at *13 (citing *Price v. Mount Sinai*

13

*Hosp.*, 458 F. App'x 49, 51 (2d Cir. 2012) (affirming district court's finding that, while the plaintiff's symptoms of stress and depression affected her sleep and appetite, "no evidence showed that [her] impairments were *substantially* limiting" (emphasis in the original))).

Although Plaintiff has testified that he has ADHD, he has not made specific allegations that this learning disability has substantially limited any of his major life activities. Plaintiff has not provided any medical records as to the severity of his ADHD, and his testimony as to his symptoms is limited to statements that he becomes "distracted easily" and is not "able to focus." (Def.'s Excerpts of Choleva Dep. at 190.) He has not offered any evidence as to how his ADHD affects his ability to learn or concentrate as compared to the general population. *See Barone*, 2019 WL 7283383, at *14 (D. Conn. Dec. 27, 2019) (granting summary judgment to defendant where plaintiff provided "no such evidence" that she was "substantially limited in [her] ability to concentrate in comparison to the general population" (internal quotation marks omitted)). To the contrary, Plaintiff has admitted that his "ADHD is effectively controlled by taking prescribed medication," and that this medication "enabled him to perform his work at NESCO without his ADHD interfering." (Parties' L.R. Stmts. ¶ 14.) Accordingly, "a reasonable jury could not find that ADHD substantially limited [Plaintiff's] ability to work or to concentrate." *Barone*, 2019 WL 7283383, at *14.

Because Plaintiff has failed to demonstrate that he is disabled within the meaning of the ADA, he has not made a *prima facie* case of discrimination. Defendant is thus entitled to summary judgment on Count Three, and the Court need not consider Defendant's alternative argument that it lacked notice of Plaintiff's ADHD.

**IV. Conclusion**

Accordingly, Defendant's Motion for Partial Summary Judgment [Doc. # 50] is DENIED

in part and GRANTED in part. The Court denies Defendant's motion as to Count Two, but grants

summary judgment as to Count Three.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 14th day of July 2020.